UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BARRY WILLIAMS,                          :
                                         :
                    Plaintiff,           :
                                         :   CIVIL NO. 3:CV-07-1044
          v.                             :
                                         :   (JUDGE VANASKIE)
SUPERINTENDENT EDWARD J.                  :
KLEM, ET AL.,                            :
                                         :
                    Defendants.          :


M E M O R A N D U M

I.    Introduction

          Plaintiff, Barry Williams, an inmate formerly housed at Mahanoy State

Correctional Institution ("SCI-Mahanoy"),[1] Frackville, Pennsylvania, filed this civil rights

action on June 8, 2007, pursuant to 42 U.S.C. § 1983.   Williams, who proceeds pro se

and in forma pauperis, alleges that Defendants violated his First, Eighth and Fourteenth

Amendment rights after he witnessed, and spoke out against, officers engaged in a

physical altercation with another inmate outside of the dining hall.   Defendants are the

following SCI-Mahanoy employees:  Superintendent Klem; Lieutenant ("Lt.") Kaufman;

---

[1] Williams is currently housed at SCI-Smithfield in Huntingdon, Pennsylvania.

Lt. Wetzel; Lt. Kmieciak; Sergeant ("Sgt.") Piskorik; Sgt. Dreher; Corrections Officer ("CO") Andrascavage; CO Clark; CO Vance; CO Gower and Nurse Chipriano.  Williams sues each defendant in their official and personal capacities and seeks compensatory and punitive damages from each.  (Dkt. Entry 1, Complaint.)  Defendants move to dismiss the Complaint on the basis of:  (1) the Eleventh Amendment's grant of sovereign immunity as to all claims lodged against them in their official capacities; (2) Williams' failure to allege a claim of retaliation; and (3) Williams' failure to state a valid cause of action under the First, Eighth or Fourteenth Amendments.  (Dkt. Entry 15, Brief in Support of Defendants' Motion to Dismiss.)  For the reasons that follow, the Court will grant in part the motion to dismiss.

II.     Factual Background

At all times relevant to this action Williams was housed at SCI-Mahanoy. On June 8, 2005, while eating in the "chow hall," Williams and other inmates in the area, witnessed a fellow inmate "being slammed up against the wall by a few guards."  (Dkt. Entry 1, Complaint.)  Williams left the chow hall and "told the guards to stop."  (Id.) Several officers then slammed Williams to the ground and placed him in handcuffs.  Lt. Kaufman then kicked plaintiff in the face.  Williams was then taken to the medical unit where he was assaulted by CO Gower, Sgt. Piskorik, Sgt. Dreher, CO Andrascavage and other unidentified officers.  These officers kicked Williams and dragged him by his

handcuffs in an attempt to break his wrists.  As a result of the assaults, Williams

incurred the following injuries: a cut on the right side of his face; a black eye; a bloody

nose; and cuts on his wrists.  Williams continues to suffer from a twitching left eye and

cheek, as well as recurrent headaches.  (Id.)

Williams avers that although he was taken to the medical unit, Nurse

Chipriano denied him medical treatment and refused to photograph his injuries.  (Id.)

Williams was then escorted to the institution's Restricted Housing Unit ("RHU"), where

he was punched and choked by CO Clark, who slammed him to the floor.  CO Vance

then commenced punching Williams in the ribs, stomach, elbows and lower back.  As

these events occurred in the RHU, Williams believes there should be a video of this

assault.  (Id.)

Later that day, Williams received two misconducts for allegedly assaulting

Lt. Kaufman and Sgt. Dreher.  Following hearings, Williams was found guilty of both

charges.  His appeals of both convictions were unsuccessful.

On June 26, 2005, Williams filed his first of four grievances relevant to this

action.  Grievance #121595 was filed on June 8, 2005, and charged defendants with

assaulting him on June 8, 2005, and questioned why Nurse Chipriano did not

photograph his injuries in accordance to prison policy.  (Id.)  On July 19, 2005,

Superintendent Klem denied the grievance, which was also denied at final appeal.  (Id.)

William's second grievance, #123390, was filed on July 13, 2005, and complained of CO Vance spitting in his food, and denying him clothing and showers while housed in the RHU.  Lt. Wetzel denied the grievance at initial review.  Superintendent Klem affirmed the denial, which was upheld at final review.  On June 27, 2005, Plaintiff filed his third grievance, #121596, asserting that the officers who assaulted him are the same as those who are now denying him basic necessities in the RHU.  Captain Derfler denied the initial response, and on September 14, 2005, Major Derfler further stated that "after the investigation [there was] no evidence of assault."  (Id.)  Superintendent Klem denied the grievance, which was affirmed at final review.  (Id.)  Williams' final grievance, #122161, filed on June 30, 2005, alleges that after he was assaulted and moved to the RHU, his property was not properly inventoried and "is probably missing."  (Id.)  Williams also claims he was transferred to another prison facility in retaliation for filing grievances about the various assaults he suffered.  On July 7, 2005, Lt. Kmieciak denied the grievance at initial review, stating that Williams had "one footlocker, one T.V., and two legal boxes" of property.  Williams argues "he has a lot more than that."  (Id.)  On July 20, 2005, Williams' mid-level appeal was denied, and on February 7, 2006, it was denied at final review.  (Id.)

III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.   When ruling on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, __ U.S. __, ___, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Twombly, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."

Twombly, 127 S.Ct. at 1969.  As such, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 127 S.Ct. at 1969; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).

Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652  (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  However, a complaint which sets forth facts affirmatively demonstrating that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

IV.    Discussion

A.    Sovereign Immunity.

Williams seeks monetary damages from each defendant by virtue of acts performed in their official capacity as Department of Corrections ("DOC") employees.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989); Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Williams' damage claims brought against the defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[2]

B.      Claims of Retaliation.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a

---

[2]Williams' claims for injunctive and declaratory relief against Defendants in their official capacities, however, are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[3]  See Lape v. Pennsylvania, 157 Fed. Appx. 491, 498 (3d Cir.  2005).

Once Plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As a general rule, prisoners retain their First Amendment rights while in

---

[3]  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

prison.  See Beard v. Banks, 548 U.S. 521, 542 (2006) ("it is well settled that even the 'worst of the worst' prisoners retain constitutional protection, specifically including their First Amendment rights").  An inmate's First Amendment rights are retained to the extent they are not inconsistent with his inmate status or with the legitimate penological objectives of the corrections system.  Pell v. Procunier, 417 U.S. 817, 822 (1974). "Free speech is not absolute at all times and under all circumstances."  Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-72 (1942).

"[T]ypes of speech that are categorically unprotected include: fighting words, Chaplinsky v. New Hampshire, 315 U.S. 568 (1942), threats, Watts v. United States, 394 U.S. 705 (1969), speech that imminently incites illegal activity, Brandenburg v. Ohio, 395 U.S. 444 (1969), and obscenity, Miller v. California, 413 U.S. 15 (1973)." U.S. v. Stevens, No. 05-2497, 2008 WL 2779529 (3d Cir. July 18, 2008).  A prisoner's exercise of his First Amendment freedoms may be curtailed if such speech poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment." Jones, 433 U.S. 119, 132 (1977).

In order to receive First Amendment protection, an inmate's speech must relate to a matter of public concern.  Bartnicki v. Vopper, 532 U.S. 514, 533-34 (2001). "To presume that all matters which transpire within a government office are of public

concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case . . . . Connick v. Myers, 461 U.S. 138, 149 (1983).  Certainly, the same is true within a correctional setting.  Perhaps one of the most fundamental and legitimate penological goals of the correctional system is the secure and orderly operation of a prison facility.  Thus, an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or engage in activities that may incite a disturbance.  See, e.g., Durkin v. Taylor, 444 F.Supp. 879 (D.C. Va. 1977)(prisoner telling prison staff he was tired of "chicken shit" rules was not protected speech).  An inmate's speech is necessarily subject to legitimate restrictions in order to maintain security, operational needs, and other legitimate penological objectives.  With respect to the protection afforded an inmate's written word within the correctional setting the same holds true.

The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  The filing of grievances is also constitutionally protected conduct.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224.  However, Pennsylvania inmates are prohibited from using "abusive, obscene or inappropriate language" in their verbal or written

communications. Corliss v. Varner, 247 Fed. Appx. 353, 355 (3d Cir. 2007).

Threatening language is also prohibited.  See Ustrak v. Fairman, 781 F.2d 573, 580 (7th

Cir. 1986).  This is true because when "a prisoner violates a legitimate prison regulation,

he is not engaged in [constitutionally] 'protected conduct'."  Wilson v. Budgeon, No.

3:05-21-1, 2007 WL 464700 at **5-6 (M.D. Pa. Feb. 13, 2007)(J. Kosik).  In other words,

while an inmate may not be retaliated against for filing a grievance, the use of language

that is otherwise punishable is not protected merely because it appears in a grievance.

Hadden v. Howard, 713 F.2d 1003, 1007 (3d Cir. 1983); Hale v. Scott, 371 F.3d 917 (7th

Cir. 2004).


       1.     Williams' Claims of Retaliation for
                Speaking Up on Behalf of Another Inmate.

Liberally construing this pro se plaintiff's allegations, it can reasonably be

inferred that Williams claims he was assaulted and issued two fabricated misconducts

on June 8, 2005, in retaliation for exercising his First Amendment right to freedom of

speech.  Viewing the facts in light most favorable to Williams, I conclude he was not

engaged in a constitutionally protected speech when he told corrections officers "to stop"

what they were doing while they were engaged in a physical altercation with another

inmate.  Williams states that he and other inmates observed staff involved in a physical

altercation with another inmate, Williams then left the chow hall and told the officers "to

stop." Williams' statement, in an unsecured area of the facility where inmates are free to drift in and out of the dining hall, with access to items easily adaptable for use as weapons, created a serious potential of further verbal and/or physical confrontation between staff and inmates if other inmates followed Williams' lead of challenging staff as they performed their jobs. Williams is not free to engage in statements that could potentially incite a disturbance. Maintaining the security of the prison facility, for the benefit of staff and inmates alike, is a paramount penological interest. Williams' critical comments of the corrections officers who were involved in a physical altercation with another inmate outside of the chow hall was not protected speech as he was not speaking on a matter of public concern and his actions had the serious potential of inciting further discord. Therefore, Williams has not asserted a claim of retaliation based on his First Amendment right of free speech, as his statement, in the context presented in the Complaint, was not protected.

2. Denial of Grievances and Adequate
Conditions of Confinement in the RHU,
the Loss of Personal Property and
Institutional Transfer in Retaliation for
Filing of Institutional Grievances.

Williams claims that after he filed a variety of institutional grievances, CO Vance and other RHU officers denied him shower opportunities and clothing. CO Vance is alleged to have spit in Williams' RHU food trays. Williams also claims defendants

retaliated against him by failing to properly inventory his personal property and transferring him to a different correctional institution due to his filing of grievances. (Dkt. Entry 1, Complaint.)

Without dispute, defendants agree that Williams has satisfied the first element of a retaliation claim, i.e. that he was engaged in a constitutionally protected activity when he filed his grievances. Defendants, however, argue that Williams fails to satisfy the second and/or third prong necessary for asserting a retaliation claim. Specifically, defendants state that none of the "adverse action" allegedly taken against Williams was "enough to deter a prisoner of ordinary firmness from exercising his First Amendment rights." (Dkt. Entry 15, Defendants' Supporting Brief.) To support their claim they note that Williams filed a total of four grievances, all of which he appealed to final review. (Id.) They also aver that the "[f]acts to provide evidence of a retaliatory motivation or a chronology of events from which retaliation can be inferred are missing from Plaintiff's complaint." (Id.)

Contrary to defendants' assertion, the fact that Williams continued to file grievances and/or this federal action despite the alleged retaliation cannot be used to determine that he failed to state a claim that his First Amendment rights were chilled, because the relevant question is whether defendants' actions would have chilled a person of "ordinary firmness" from exercising his future First Amendment activities."

-13-

Allah v. Seiverling, 229 F.3d at 225.  Williams has presented sufficient evidence of adverse action to survive defendants' motion to dismiss.

The third element Williams must plead to assert a prima facie case of retaliation is that his filing of grievances was a substantial motivating factor in the prison officials' decision to take adverse action against him.  Williams alleges in the Complaint that he filed his initial grievance on June 26, 2005, claiming he was assaulted on June 8, 2005.  The following day he filed another grievance that the same officers who allegedly assaulted him were now denying him "basic products" in the RHU.  (See Dkt. Entry 1, Complaint at R. 7.)[4]  Three days later he filed a grievance related to his loss of property and that he was being transferred in to another facility in retaliation for his previous grievances.  (Id.)  Shortly after his assault grievance was addressed at the initial level, CO Spark and CO Vance, who are alleged to have assaulted him, tampered with his food.  (Id.)  At this stage of the litigation, given the temporal connection between the alleged claims of retaliation and the processing of his various grievances, there are enough facts set forth by Williams to raise a reasonable expectation that further discovery in this case may reveal evidence of retaliatory intent.  Accordingly, defendants' motion to dismiss with respect to Williams' claims of retaliation for the filing of administrative grievances will be denied.

---

[4]  "R." or "RR." references are to the CM/ECF pagination of the document cited.

C.      Eighth Amendment Medical and RHU
        Conditions of Confinement Claims.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  To establish an Eighth Amendment claim, Williams must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety.  Farmer, 511 U.S. at 834.  In reviewing this type of claim, the courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.  Moreover, the focus must be on the deprivation of a particular basic necessity.  As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

-15-

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837.

> 1. Williams' Eighth Amendment Medical
>    Claim Against Nurse Chipriano.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr.

Inst. Inmates, 834 F.2d at 347.  "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.'" Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

Prior to reaching the infirmary on June 8, 2005, Williams purportedly endured two assaults, one near the chow hall and another gang type assault while in the medical unit.  Plaintiff states he was kicked in the head, the right side of his face was cut, and he had a black eye, a bloody nose, and bleeding wrists.  He also claims his left eye and cheek were "twitching and [that he suffers from] headaches that won't stop to this day."  (Dkt. Entry 1, Complaint at R. 5.)  Williams claims he was seen by Nurse Chipriano who failed to treat him or take photographs to document his injuries.  Defendants allege that Williams' injuries did "not amount to a serious medical need" as they were no more serious than a cut requiring  no more than small bandages.[5]  (Dkt.

---

[5]  Alternatively, Defendants argue that even if Williams can meet the elements of establishing an Eighth Amendment claim for the denial of medical care, "he has not alleged that he grieved the alleged denial of medical treat."  (Dkt. Entry 15, Defendants' Supporting Brief at R. 12 at fn. 1.)  It is clear that an inmate's failure to exhaust available administrative remedies is an affirmative defense.  See Jones v. Bock, __ U.S. __, __, 127 S. Ct. 910, 922 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  As such, it must be pled and proven by the defendants.  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

Entry 15, Defendants' Supporting Brief.)

It cannot be determined at this stage that Williams did not suffer an objectively serious medical need on June 8, 2005.  Williams has also alleged sufficient facts to show that Nurse Chipriano was deliberately indifferent to his medical needs when she ignored his requests for medical treatment and he received no medical treatment for his injuries.

2.      Eighth Amendment RHU Conditions of Confinement Claims.

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care.  Farmer, 511 U.S. at 832.  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

Here, Williams alleges CO Clark and CO Vance spit in his food tray, and denied him showers and clothing during some undefined portion of his RHU stay. Viewing the complaint through the lens of Haines v. Kerner, Williams' averments are sufficient to state a claim for unconstitutional "conditions of confinement" while housed in the RHU.

3.      Williams' Three Excessive Use of Force
        Claims.

Williams claims to have been involved in no less than three excessive use of force events on June 8, 2005.  The first occurred outside the chow hall, the second transpired in the medical unit, and the final assault took place in the RHU.  Defendants do not address these allegations or move to dismiss them.  Therefore, these claims proceed unchallenged.

D.      Fourteenth Amendment Claims of Loss of
        Property, Fabricated Misconducts and
        Denial of Grievances.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to determine whether a due-process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  See Sandin, 515 U.S. at 484. A protected liberty interest may be created by either the Due Process Clause itself or by state law.  Id.  Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.  Conversely, there can be no due process violation where there is no protected liberty interest.

1.      Denial of Personal Property.

-19-

"A prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." Mattis v. Dohman, 260 Fed. Appx. 458 at *2 (3d Cir. 2008)(citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Pennsylvania "has established an internal grievance procedure through which the state hears claims, and when appropriate, provides remedies; [Williams] was provided with a meaningful post-deprivation remedy regarding the loss of his property in the form of this grievance system." Mattis, 260 Fed. Appx. at *2; Tillman, 221 F.3d at 421-22. Thus, Williams fails to state a Due Process claim resulting from defendants' intentional or negligent loss of his personal property.

> 2.      Receipt of Fabricated Misconducts.

Williams claims defendants violated his Due Process rights by filing two false misconduct reports against him which resulted in his placement in the RHU. An allegation by an inmate that he was falsely accused, without more, fails to state a civil rights claim. See Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D. Pa.1992), aff'd., 980 F.2d 722 (3d Cir.1992). Moreover, plaintiff has no due process protected right not to be placed in disciplinary segregation because such placement is not an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)("confinement in

administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest.") Furthermore, as Williams "had a procedural opportunity to address his assertion that the misconduct reports were false, the [due process] claim must fail." Pressley v. Johnson, 268 Fed. Appx. 181 (3d Cir. 2008)(citing Smith, 293 F.3d 641)("as long as procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim").  Therefore, Williams' claim that defendants violated his Fourteenth Amendment rights when they allegedly issued him two false misconducts must be dismissed for failure to state a claim.

3.      Denial of Inmate Grievances by Klem,
        Wetzel and Kmieciak.

Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")  Williams' dissatisfaction with response to his grievances does support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005).  Furthermore, the fact that these defendants responded inappropriately to Williams' grievances about unconstitutional acts that occurred prior to their review of his grievance does not establish their personal involvement in the alleged wrongdoing

sufficient to assert a Section 1983 claim.  See Rode v. Dellarciprete, 845 F.2d 1195,

1207 (3d Cir. 1988).  Furthermore, liability under § 1983 cannot be based solely on a

theory of respondeat superior.  Id.  Thus, Williams' claim that Klem, Wetzel and

Kmieciak violated his constitutional rights by denying his various grievances will be

dismissed.

      An appropriate Order is attached.

                  s/ Thomas I. Vanaskie
                  Thomas I. Vanaskie
                  United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BARRY WILLIAMS,                          :
                                         :
              Plaintiff,                  :
                                         :  CIVIL NO. 3:CV-07-1044
        v.                               :
                                         :  (JUDGE VANASKIE)
SUPERINTENDENT EDWARD J.                  :
KLEM, ET AL.,                            :
                                         :
              Defendants.                 :

## O R D E R

NOW, THIS 30th DAY OF SEPTEMBER, 2008, for the reasons set forth

in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1.   Defendants' Motion to Dismiss (Dkt. Entry 12)
     is GRANTED in part and DENIED in part.

2.   Williams' damage claims lodged against
     defendants in their official capacity are
     DISMISSED.

3.   Williams' claim that he was assaulted on June
     8, 2005, and issued two misconducts, in
     retaliation for exercising his First Amendment
     freedom of speech rights are DISMISSED.

4.   Williams' due process claims related to the
     loss of his personal property are DISMISSED.

5.   Williams' claim that he received two
     fabricated misconducts in violation of his due
     process rights is DISMISSED.

6.     Williams' claims against Klem, Wetzel and
       Kmiweciak for their denial of his institutional
       grievances is DISMISSED.

7.     Defendants' Motion to Dismiss Williams' claim
       of retaliation based on his filing of institutional
       grievances is DENIED.

8.     Defendants' Motion to Dismiss Williams'
       Eighth Amendment medical claim against
       Nurse Chipriano is DENIED.

9.     Defendants' Motion to Dismiss Williams'
       Eighth Amendment RHU conditions of
       confinement claim is DENIED.

10.    Williams three Eighth Amendment excessive
       use of force claims survive Defendants'
       Motion to Dismiss.

11.    Pursuant to Fed. R. Civ. P. 12(a)(4)(A),
       defendants shall answer the Complaint in this
       matter within ten (10) days of the date of this
       Order.

                          s/ Thomas I. Vanaskie
                          Thomas I. Vanaskie
                          United States District Judge