# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY WILLIAMS,** | : | **Civil No. 3:07-1044** |
| | : | |
| **Plaintiff,** | : | **(Judge Caldwell)** |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **EDWARD KLEM, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case.

This is a civil rights action brought by Barry Williams, a state inmate, arising out of a June 8, 2005 affray between Williams and correctional staff. (Doc. 1.) This matter now comes before the Court on a Motion to Compel filed by Williams which seeks further discovery responses from the remaining Defendants in this case. (Doc. 45.) This motion has been fully briefed by the parties, (Docs. 46, 47, and 57), a process which has helped to clarify the nature of this on-going discovery dispute.

As described by the parties, the disputed discovery issues fall into the following six general categories: First, Williams seeks access to his own psychiatric records from June 1, 2005 to the present. Second, Williams seeks access to any videotapes depicting this June 8, 2005 institutional quarrel. Third, Williams demands production of any Pennsylvania State Police reports relating to this incident. Fourth,

Williams demands production of all statements and reports attached to the Department of Corrections' extraordinary occurrence report which detailed this June 8, 2005 institutional affray. Fifth, Williams requested what he called the "falsified" reports made by Sgt. Piskarik. Finally, Williams requested access to certain prison files maintained on him, specifically requesting access to a 17-x report, as well as DC-14 and DC-15 files. As to these records, the scope of Williams' initial request was not entirely clear at the outset, leading the corrections Defendants to express a concern that these files were sought in their entirety. (Doc. 47.) As we construe Williams' reply brief, however, he seems to seek only those records which are contained in these files and relate to the June 8, 2005 incident at the prison. (Doc. 57, p. 2, "Plaintiff is only requesting all information about and/or talking about the incident on 6-8-05.")

In response to these requests, the Defendants assert that in many instances they have provided the requested documents and materials to Williams. The Defendants have objected to the disclosure of a few categories of information, arguing that the disclosure of this information is not calculated to lead to the discovery of otherwise admissible evidence, and that disclosure of the information may undermine institutional security or violate the personal privacy of others.

For the reasons set forth below, Williams' motion will be denied, in part, and granted, in part.

## II. Discussion

### A. Rule 26, the Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Williams' motion, and the Defendants' response in opposition to this motion, call upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding

the conduct of discovery will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the Court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Applying these benchmark standards, we now turn to the discovery requests propounded by Williams.

**B.** **Williams' Requests for Access to Prison Videos, and His Own Psychiatric Reports Should Be Granted and Reportedly Have Been Produced by the Defendants**

At the outset, Williams seeks to review his prison psychiatric records, and any videotaped depictions of this June 8, 2005 incident. With respect to medical records, Williams is entitled to gain some access to those records, provided he complies with

Department of Corrections policies and procedures. See, e.g., Bull v. United States, 143 F.App'x 468 (3d. Cir. 2005); Daniels v. Kelchner, No. 05-1601, 2007 WL 2068631 (M.D. Pa. July 17, 2007). In particular, Williams may review his own psychiatric records, subject to such reasonable confidentiality constraints as may be imposed by the Department of Corrections. See Mincy v. Chmielewski, No. 05-292, 2006 WL 3042968 (M.D.Pa. Oct. 25, 2006). Furthermore, the Department of Corrections reports that it has provided this material to Williams. (Doc. 47.) Therefore, with respect to this request, it is ordered that Whetstone's request be granted, in part, provided that he completes the procedures prescribed by Department of Corrections policies.

Similarly, the Department of Corrections reports that it has provided Williams with an opportunity to view the videos of this June 8, 2005 incident that are in its care, custody and possession. (Doc. 47.) While we believe that Williams is entitled to this material as well, we deem this response to fully satisfy this particular discovery request.

### C. The Defendants' Assertion That They Do Not Possess Other Materials Sought By Williams Satisfies Their Discovery Obligations

In addition, the corrections Defendants have responded to one of Williams' requests –his demand for State Police reports– by advising the Plaintiff that the items he seeks are not in their possession, custody or control. While Williams may express skepticism regarding this response, we find that this response fully addresses Williams' request, and we accept the representations that the Defendants do not possess these records. We also acknowledge that the Defendants must stand ready to supplement their disclosures should they uncover additional responsive materials as the litigation progresses. Since this response is adequate, Williams' motion to compel as to these matters will be denied.

> **D. Williams Is Not Entitled to Unfettered Access to Agency Files and Reports, But May be Entitled to Examine Redacted Copies of Certain Reports**.

Finally, in his motion Williams seeks access to three categories of information. Specifically, Williams demands: (1) production of all statements and reports attached to the Department of Corrections' extraordinary occurrence report which detailed this June 8, 2005 institutional affray; (2) copies of what Williams has characterized as the "falsified" reports made by Sgt. Piskarik; and (3) access to certain prison files maintained on him, specifically requesting access to a 17-x report, as well as DC-14 and DC-15 files.

With respect to these requests, we find as follows:

First, without in any way accepting the Plaintiff's characterization of any of the documents, we find that statements authored by Sgt. Piskarik, a named Defendant in this action, describing the June 8 incident are relevant and should be collected and prepared for submission to the Court and release to the Plaintiff in a redacted form, as described below.

Second, other witness statements purporting to describe and discuss the June 8, 2005 incident, attached to the Department of Corrections' extraordinary occurrence report which detailed this June 8, 2005 institutional affray should also be collected and prepared for submission to the Court and released to the Plaintiff in a redacted form, as described below.

Finally, redacted copies of any records from the Plaintiff's DC-14 and DC-15 files which relate to this incident should also be collected and prepared for submission to the court and release to the Plaintiff in a redacted form, as described below.

We will consider the release of the relevant portions of these materials, in a redacted format, to the Plaintiff after we conduct an *in camera* review of any submissions, with redactions, tendered by the Defendants. In making these redactions we anticipate that the defendants will delete from these documents any personal information, such as social security numbers, as well as agency conclusions and

recommendations, since we find that the deletion of personal information from these records is necessary, appropriate and consistent with prior case law. See Paluch v. Dawson, No. 06-1751, 2007 WL 4375937 (M.D. Pa. Dec. 12, 2007). We also conclude that adopting this course is consistent with settled case law addressing claims of governmental privilege relating to investigative records which acknowledges a governmental privilege but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973). When striking this balance courts have, in the past, reconciled the competing needs of civil rights litigants for information regarding facts developed by agency officials, with the

Government's need to protect its deliberative processes, by directing the release of non-privileged, factual information in a report to the plaintiff. For example, in Sullivan v. Pa. Dep't of Corrections, 2007 U.S. Dist. LEXIS 19216, *1-2 (M.D. Pa. 2007) (McClure, J.), the Court limited discovery of a report regarding an investigation by the OPR concerning allegations made by two former prison psychologists, holding that, after weighing the parties' interests, only certain non-privileged material contained in the investigation report was discoverable under Rule 26. Id. at *9.

Recognizing that these prison records may contain arguably discoverable factual material, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the Defendants to provide to the Court for its *in camera* inspection any records responsive to these requests, along with proposed redactions to those records that the Defendants deem appropriate in light of their objections to wholesale disclosure of this information. Armed with

this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.

Accordingly, this 14th day of September 2010, it is ORDERED that the Plaintiff's motion to compel, (Doc. 45), is GRANTED, in part, and DENIED, in part, as follows:

First, with respect to the requests for access to videos depicting the June 8, 2005 incident that is the subject of this lawsuit, and Williams' request for access to his own psychiatric records, we will grant these requests, and note that the Defendants represent that Williams has already gained access to this material.

Second, with respect to Williams' request for copies of State Police reports concerning this incident, in light of the Defendants' representation that they do not possess such reports, this request will be denied.

Finally, with respect to Williams' demands for: (1) production of all statements and reports attached to the Department of Corrections' extraordinary occurrence report which detailed this June 8, 2005 institutional affray; (2) copies of what Williams has characterized as the "falsified" reports made by Sgt. Piskarik; and (3) access to certain prison files maintained on him, specifically requesting access to a

17-x report, as well as DC-14 and DC-15 files, on or before **October 18, 2010**, we direct the Defendants to provide to the Court for its *in camera* inspection any records responsive to these requests, along with proposed redactions to those records that the Defendants deem appropriate in light of their objections to wholesale disclosure of this information. Armed with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the Plaintiff.

So ordered this 15th day of September, 2010.

*S/Martin C. Carlson*
**United States Magistrate Judge**